Mark Stromberg, Esquire
Texas Bar No. 19408830
STROMBERG STOCK
Two Lincoln Center
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
Telephone: (972) 458-5353
Facsimile: (972) 770-2156
mark@strombergstock.com

Attorney for American Express

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS (FORT WORTH)

In re: TRACY OWNBEY,

                Debtor.

_____ /

AMERICAN EXPRESS CENTURION BANK and
AMERICAN EXPRESS BANK, FSB,

                Plaintiffs,

Vs.

TRACY OWNBEY, a/k/a TRACY A. OWNBEY

                Defendant.

_____ /

Chapter 7 Bankruptcy
Case No.: 13-41553-dml7

Adversary Proceeding No.: 13-

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiffs, American Express Centurion Bank and American Express Bank, FSB ("American Express"), by and through its counsel, hereby represent as follows:

1. The Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §157(a), (b)(1), (b)(2)(I) and (J) (core proceeding), §1334(b) and 11 U.S.C. §523(c).

2. On April 1, 2013, Tracy Ownbey, a/k/a Tracy A. Ownbey ("Defendant" and/or "Debtor"), filed a voluntary Chapter 7 petition.

3. American Express is the holder of a claim against the Defendant arising from the use of credit card account number xxxx-xxxxxx-x3006 ("Account 1").

4. The Defendant opened Account 1 in December 2006.

5. The balance on Account 1 as of the date of the filing of the Chapter 7 petition was $15,031.91.

6. American Express is the holder of a claim against the Defendant arising from the use of credit card account number xxxx-xxxxxx-x9008 ("Account 2").

7. The Defendant opened Account 2 in April 1985.

8. The balance on Account 2 as of the date of the filing of the Chapter 7 petition was $3,627.53.

9. The terms and conditions of the agreements between the Defendant and American Express for Account 1 and Account 2 call for the payment of all costs and other expenses expended by American Express in the collection of the Accounts, which is hereby requested by American Express.

## FIRST COUNT

10. Paragraphs 1 through 9 are hereby repeated and incorporated as if fully set forth herein.

11. Between January 2, 2013 and March 31, 2013, the Defendant incurred seventy-five (75) transactions totaling $16,910.09 on Account 1 and Account 2.

12. Of the transactions referenced in Paragraph 11 above, fifty-five (55) charges totaling $10,081.05 were incurred on Account 1 between January 31, 2013 and March 31, 2013.

13. All of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above were incurred for goods and services on or within ninety days of the filing of the filing of the Debtor's bankruptcy petition and may be presumed nondischargeable pursuant to 11 U.S.C. §523(a)(2)(C).

14. According to the filed Certificate of Counseling, the Debtor completed credit counseling on February 3, 2013.

15. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, forty-eight (48) charges totaling $8,189.39 were incurred on and after February 3, 2013, the date the Debtor reports he completed Credit Counseling in anticipation of filing bankruptcy.

16. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, seven (7) charges totaling $374.22 were incurred by the supplemental cardholder/non-filing spouse.

17. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, eleven (11) charges totaling $4,627.46 were incurred for air travel and related fees.

18. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, five (5) charges totaling $1,124.53 were incurred at Costco.

19. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, four (4) charges totaling $802.52 were incurred for at various hotels including the Hilton and Hyatt.

20. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, eleven (11) charges totaling $668.35 were incurred at various restaurants.

21. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, two (2) charges totaling $630.20 were incurred to Orbitz.com.

22. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, two (2) charges totaling $744.65 were incurred at Office Depot.

23. Of the transactions at issue on Account 1 and referenced in paragraphs 11 and 12 above, three (3) charges totaling $290.00 appear to have been incurred for pre-paid cards.

24. The relevant portion of the statements for Account 1 are attached hereto as Exhibit "A" and reflect the charges, payments and credits alleged in this Complaint.

25. The terms and conditions of the Agreement between the Defendant and American Express for Account 1 call for a monthly minimum payment toward the Account balance by the date stated on each monthly bill.

26. Prior to the charges at issue on Account 1, the previous month's balance of $8,923.70 was paid and credited down to $5,599.78.

27. According to Account 1's history, in the year preceding the charges at issue, the Defendant paid the Account balance, in full, upon receipt of the monthly billing statement, even though the terms of Account 1 permitted monthly minimum payments.

28. Here, the Defendant incurred $10,081.05 in charges on Account 1 over a two-month period. After the Defendant incurred $4,812.11 of the charges at issue during the first month, he made a payment toward those charges of just $1,000.00, whereas in the twelve months prior, the Defendant had paid the Account in full each month. After incurring the first month of charges and submitting the $1,000.00 payment, the Defendant continued to incur charges on Account 1 up until March 31, 2013, after which he made no further payments on Account 1.

29. Based on the foregoing, American Express asserts the Defendant's use of Account 1 during the period at issue was out of pattern from his prior use of the Account.

30. In addition, the one payment the Defendant made toward the charges at issue on Account 1 was submitted on March 19, 2013, nearly two months <u>after</u> having already completed credit counseling in anticipation of filing bankruptcy. As such, it appears at the time he was incurring the charges to Account 1, the Defendant already intended to discharge the resulting debt in bankruptcy.

31. Schedule F of the Defendant's bankruptcy petition reports $2,012,333.95 in general unsecured debt.

32. Schedule I reports the Defendant's monthly net income as $10,976.24. No income or employment information is reported for the Defendant's non-filing spouse. According to Schedule I, the Defendant's monthly household living expenses and payments on secured debt total $7,868.00, not including monthly payments toward the $2,012,333.95 in general unsecured debt reported on Schedule F. Thus, the Defendant's monthly household disposable income appears to be $3,108.24.

33. In addition, in his Statement of Financial Affairs at paragraph 10, the Defendant reports that in April 2012, he "sold house netted $65,000.00 used funds to pay debts and live on," suggesting that as of April 2012, the Defendant's monthly household income was already insufficient to pay his living expenses and existing debt.

34. Thus, it appears that at the time the Defendant incurred the charges to Account 1, he already knew he was struggling to meet his debt obligations and that would be unable to repay American Express for the newly incurred debt and therefore, could not have intended to honor his obligation to repay American Express.

35. The Defendant's intent not to repay American Express is further evidenced by the $8,189.39 in charges incurred to Account 1 <u>after</u> the Defendant had already completed credit counseling in contemplation of filing bankruptcy.

36. American Express asserts that each time the Defendant incurred one of the charges at issue on Account 1, he was making an implied representation to American Express of his intent and his ability to repay the resulting debt.

37. Therefore, American Express asserts that the Defendant obtained goods and services by incurring the charges at issue on Account 1 through representations which either the Defendant knew to be false, or which he made with such reckless disregard for the truth as to constitute willful misrepresentations.

38. American Express further asserts that the Defendant made these misrepresentations with the intention and purpose of deceiving American Express so American Express would continue to extend credit that would enable the Defendant to charge goods and services on Account 1.

39. The Defendant has been an American Express card member holding multiple accounts for over 20 years.

40. As noted above, prior to the charges at issue, the Defendant's habit was to pay Account 1 in full each month even though he was permitted to pay over a period of time with monthly minimum payments.

41. Thus, American Express justifiably relied on the Defendant's false representations based in part upon his status as a card member in good standing since 1985. Further, as the charges at issue were incurred over such a short span of time, there were no "red flags" evident just prior to or during the time-period of charging activity identified on Exhibit "A."

42. In addition, based on the information reported in the bankruptcy petition, the Defendant appears to have a significant amount of financial sophistication. In his Statement of Financial Affairs, the Defendant reports owning or having owned multiple businesses that include real estate and investments. According to Schedule B, the Defendant has multiple life insurance policies, a pension, investment accounts and a 401k with a reported balance of $850,000.00. Thus, American Express had no reason to question the charging activity that occurred on Account 1 during the relevant period.

43. As the proximate result of extending credit based on the Defendant's misrepresentations, American Express has sustained loss and damage on Account 1 totaling $9,081.05, after accounting for the one payment of $1,000.00.

44. American Express asserts that a portion of the balance on Account 1 totaling $9,081.05 was incurred by the Defendant with the knowledge of his inability to repay it.

45. American Express asserts that a portion of the balance on Account 1 totaling $9,081.05 was incurred by the Defendant without the intent to repay it.

46. American Express asserts that a portion of the balance on Account 1 totaling $8,189.39 was incurred by the Defendant <u>after</u> he had already completed credit counseling in anticipation of filing bankruptcy and as such, at the time the Defendant incurred these charges to Account 1 he already intended to discharge the resulting debt in bankruptcy.

47. Therefore, a portion of the balance on Account 1 totaling $9,081.05 was obtained by the Defendant's false pretenses, a false representation, or actual fraud.

48. A portion of the balance on Account 1 totaling $9,081.05 was incurred on or within 90 days of the filing of the bankruptcy petition and as such may be presumed nondischargeable.

49. For the reasons above, a portion of the balance on Account 1 totaling $9,081.05 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(C).

50. For the reasons above, a portion of the balance on Account 1 totaling $9,081.05 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## SECOND COUNT

51. Paragraphs 1 through 50 are hereby repeated and incorporated as if fully set forth herein.

52. Of the transactions at issue referenced in Paragraph 11 above, twenty (20) charges totaling $6,829.04 were incurred on Account 2 between January 2, 2013 and February 4, 2013.

53. All of the transactions incurred on Account 2 and referenced in paragraph 53 above were incurred for goods and services on or within ninety days of the filing of the Debtor's bankruptcy petition and may be presumed nondischargeable pursuant to 11 U.S.C. §523 (a)(2)(C).

54. Of the transactions at issue on Account 2, one (1) charge in the amount of $5,445.26 was incurred to Celebrity Cruise.

55. Of the transactions at issue on Account 2, four (4) charges totaling $531.32 were incurred at various hotels.

56. Of the transactions at issue on Account 2, one (1) charge in the amount of $208.90 was incurred to Hotwire.com for travel.

57. The relevant portions of the statements for Account 2 are attached hereto as Exhibit "B" and reflect the charges, credits and payments alleged in this Complaint.

58. The terms and conditions of the Agreement between the Defendant and American Express for Account 2 call for payment in full of the Account balance upon receipt of the monthly billing statement.

59. Prior to the charges at issue on Account 2, the previous month's balance of $7,279.00 was paid and credited down to zero.

60. According to the Account history for the year prior to the charges, the Defendant normally paid the balance of Account 2 <u>in full</u> every month upon receipt of the monthly billing statements as required by the Account Agreement.

61. Here, the Defendant incurred $6,829.04 in charges to Account 2 between January 2, 2013 and February 4, 2013 for which payment <u>in full</u> was due by February 18, 2013. However, unbeknownst to American Express, the Defendant had completed credit counseling on February 3, 2013, intending to file bankruptcy. Thereafter, on February 19, 2013 and again on March 19, 2013, <u>after</u> already having competed credit counseling and presumably, after already having consulted with a bankruptcy attorney, the Defendant submitted 2 <u>partial payments</u> totaling $3,000.00 toward the $6,829.04 in charges he had just incurred on Account 2 and for which, payment <u>in full</u> was due by February 18, 2013, thereby leaving an unpaid overdue balance of $3,416.06 on Account 2, after accounting for credits to the Account.

62. Based on the unsecured debt reported on Amended Schedule F, along with the Defendant's income, expenses and disposable income reported in his Bankruptcy Schedules, it appears that at the time the Defendant was incurring the charges to Account 2, he was already struggling to meet his basic living expenses and payments on secured debt, let alone repay American Express for the newly incurred debt.

63. American Express asserts that each time the Defendant incurred one of the charges at issue to Account 2 he was making an implied representation to American Express of his intent and his ability to repay the resulting debt.

64. Therefore, American Express asserts that the Defendant obtained goods and services by incurring the charges at issue on Account 2 through representations, which either the Defendant knew to be false or which he made with such reckless disregard for the truth as to constitute willful misrepresentation.

65. Based on the foregoing, American Express further asserts that the Defendant made misrepresentations with the intention and purpose of deceiving American Express so that American Express would continue to extend credit that would enable the Defendant to charge goods and services on Account 2.

66. As set forth in Count 1 above, American Express justifiably relied on the Defendant's representations based, in part, on his as a cardmember in good standing since 1985.

67. In addition to the payments totaling $3,000.00 described above, 3 credits totaling $412.98 were also applied to the balance of Account 2. Thus, the amount at issue on Account 2 is $3,416.06.

68. As the proximate result of extending credit based on the Defendant's misrepresentations, American Express has sustained loss and damage on Account 2 totaling $3,416.06.

69. American Express asserts that the balance on Account 2 totaling $3,416.06 was incurred by the Defendant with the knowledge of his inability to repay it.

70. American Express asserts that the balance on Account 2 totaling $3,416.06 was incurred by the Defendant without the intent to repay it.

71. Therefore, the balance on Account 2 totaling $3,416.06 was obtained through false pretenses, a false representation, or actual fraud by the Defendant.

72. American Express further asserts that the balance on Account 2 totaling $3,416.06 was incurred on or within 90 days of the filing of the bankruptcy petition and as such may be presumed nondischargeable.

73. For the reasons above, the balance on Account 2 totaling $3,416.06 is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(C).

74. For the reasons above, the balance on Account 2 totaling $3,416.06 is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

WHEREFORE, American Express prays this Honorable Court for a nondischargeable judgment, pursuant to 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. § 523(a)(2)(C), against the Defendant on Account 1 and Account 2 in the total amount of $12,497.11, plus interest, attorneys' fees and costs, or any other such relief as the Court may deem appropriate.

Respectfully submitted,

Dated: July 19, 2013    By:   /s/ Mark Stromberg
Mark Stromberg
Texas Bar No. 19408830
STROMBERG STOCK
Two Lincoln Center
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
Telephone: (972) 458-5353
Facsimile: (972) 770-2156
mark@strombergstock.com
Attorneys for Plaintiff, American Express